UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. _____

**DIRECT GENERAL INSURANCE COMPANY,**

      **Plaintiff,**

  vs.

**INDIAN HARBOR INSURANCE COMPANY, HOUSTON CASUALTY COMPANY,** AND **NATIONAL SPECIALTY INSURANCE COMPANY,**

      **Defendants.**

**JURY TRIAL DEMANDED**

---

## COMPLAINT FOR DECLARATORY RELIEF

Plaintiff Direct General Insurance Company ("Direct General" or "Plaintiff"), for its causes of action against the defendants, Indian Harbor Insurance Company, Houston Casualty Company, and National Specialty Insurance Company (collectively, "the Insurers" or "Defendants"), states as follows:

### NATURE OF ACTION

This action seeks insurance coverage under Direct General's primary and excess professional liability insurance policies for defense expenses and indemnity arising from two putative class action lawsuits and numerous individual demands and lawsuits contending that Direct General erred in its interpretation of the terms of its automobile insurance policies sold to Florida policyholders and breached its duties to pay personal injury protection ("PIP") expenses under those policies and under Florida law (collectively, the "PIP Claims"). Because the PIP

Claims allege covered claims to which no exclusions apply, Direct General is entitled to a declaration that Defendants must pay past and future defense expenses incurred by Direct General and must indemnify Direct General for past and future settlements and judgments.

## PARTIES

1. Direct General is organized under the laws of Indiana, and has its principal place of business at 1281 Murfeesboro Road, Nashville, Tennessee 37217.

2. Indian Harbor Insurance Company ("Indian Harbor") is organized under the laws of Delaware, and has its principal place of business at 70 Seaview Avenue, Stamford, Connecticut 06902-6040.  Indian Harbor may be served with process through its registered agent for service of process, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801 and/or by delivering summons and a copy of the complaint to the Florida Insurance Commissioner.

3. Houston Casualty Company ("Houston Casualty") is organized under the laws of Texas, and has its principal place of business at 13403 Northwest Freeway, Houston, Texas 77040.  Houston Casualty Company may be served with process through its registered agent for service of process, NRAI Services, Inc., 1200 South Pine Island Road, Plantation, Florida 33324 and/or by delivering summons and a copy of the complaint to the Florida Insurance Commissioner.

4. National Specialty Insurance Company ("National Specialty") is organized under the laws of Texas, and has its principal place of business at 1900 L. Don Dodson Drive, Bedford, Texas 76021.  National Specialty may be served with process through its registered agent for service of process, Chief Financial Officer, 200 E. Gaines Street, Tallahassee, Florida 32399.

**JURISDICTION AND VENUE**

5.      This Court has jurisdiction over the subject matter of this action under the Declaratory Judgment Act, 28 U.S.C. § 2201, because an actual and justiciable controversy exists between the parties.

6.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332(a)(1) because there is complete diversity among the parties, and the amount in controversy exceeds $75,000, exclusive of interests and costs.

7.      This Court has personal jurisdiction over Defendants in this state and district under the Due Process Clause of the Constitution and under Florida's long-arm statute, Fla. Stat. § 48.193(1)(a)(4), because Direct General's causes of action arise from Defendants' entry into a contract of insurance covering persons and risks located here.

8.      Venue is proper in this judicial district under 28 U.S.C.A. § 1391(b)(2) because a substantial part of the events giving rise to Direct General's claim occurred here.

**FACTS**

THE PIP STATUTE

9.      Fla. Stat. § 627.736 (the "PIP Statute") requires automobile insurers issuing policies in Florida to reimburse each policyholder for certain medical expenses that the policyholder incurs after an auto accident without regard to fault.

10.     Prior to January 1, 2008, the PIP Statute required insurers to pay 80% of reasonable and necessary charges incurred by a policyholder for medical services (the "Reasonable Amount Method").

11. Beginning on January 1, 2008, the PIP Statute permitted insurers to pay 80% of the maximum charges listed on a statutory Fee Schedule (the "Fee Schedule Method") as an alternative to the Reasonable Amount Method (the "2008 Revision").

12. Beginning on July 1, 2012, the PIP Statute provided that an insurer could limit payment to the Fee Schedule Method only if the insurance policy included a notice at the time of issuance or renewal that the insurer may limit payment pursuant to the schedule of charges specified in the PIP statute (the "2012 Revision").

## DIRECT GENERAL'S AUTOMOBILE INSURANCE POLICIES

13. Based on its interpretation of the 2008 Revision, beginning in 2008, Direct General construed its automobile insurance policies to permit Direct General to reimburse its policyholders for 80% of the maximum charges listed on the statutory Fee Schedule.

14. Direct General issued several endorsements to its automobile insurance policies to address the 2008 Revision and the 2012 Revision, including the May 28, 2010 Endorsement FL028A (04-10) (the "2010 Endorsement"), the 2012 Endorsement FL028A (01-12) (the "2012 Endorsement"), and the Direct General Endorsement, FL028A (01-13) (the "2013 Endorsement").  The Florida Office of Insurance Regulation approved these endorsements.

15. The 2010 Endorsement added the following statement:  "we **may** reduce payments for amounts that are billed to any lesser amount that results from the application of any schedule of charges or alternative reimbursement method that is expressly referenced or authorized for use by insurers under the No Fault Law."  (Bold in original.)

16. The 2012 Endorsement stated:  "[w]ith respect to **medical expenses** that otherwise meet the requirements for reimbursement under Section (A)(1) above, **we** will limit

reimbursement to a maximum of 80 percent of the following schedule of maximum charges." (Bold in original.)  The text of the statutory Fee Schedule followed.

17. The 2013 Endorsement defined "**PIP Fee Schedule**" as "80% of the following schedule of maximum charges for **medical expenses** as set forth in § 627.736(5)(a)1, Florida Statutes."  (Bold in original.)  The text of the statutory Fee Schedule followed.

## THE UNDERLYING ACTIONS

*The Advantage MRI Class Action*

18. On June 19, 2008, Advantage Open MRI, Inc. ("Advantage MRI") filed a complaint against Direct General in the County Court for the Thirteenth Judicial Circuit in Hillsborough County, Florida.  The civil jurisdiction of the County Court is limited to cases seeking less than $15,000.  Advantage MRI filed a First Amended Complaint against Direct General on July 3, 2008.  Direct General answered on August 12, 2008.

19. On October 2, 2008, Advantage MRI moved for leave to amend the First Amended Complaint and also requested transfer of the case to the Circuit Court for the Thirteenth Judicial Circuit in Hillsborough County, Florida.  In its proposed second amended complaint, Advantage MRI requested certification of a class consisting of all health care providers who had sought reimbursement for medical services provided to Direct General's policyholders and sought damages not to exceed $5 million (the "Advantage MRI Complaint").

20. The Advantage MRI Complaint alleged that Direct General committed an error when it interpreted the terms of its automobile insurance policies sold to Florida policyholders and the PIP Statute to allow payment of medical expenses under the Fee Schedule Method rather than the Reasonable Amount Method.  The Advantage MRI Complaint further

alleged that Direct General breached its duties under its automobile insurance policies and under Florida law by failing to pay the higher amount allegedly due under the Reasonable Amount Method. The Advantage MRI Complaint sought declaratory and injunctive relief, substantial attorneys' fees and costs, and damages in the amount of the difference between the higher Reasonable Amount Method and the lower Fee Schedule Method.

21. Advantage MRI voluntarily dismissed its action against Direct General on November 23, 2010 due to the dissolution of Advantage MRI's business.

*The St. Pete MRI Class Action*

22. On or about September 11, 2012, MRI Associates of St. Pete, Inc. d/b/a/ St. Pete MRI filed a class action complaint against Direct General in the Circuit Court for the Thirteenth Judicial Circuit in Hillsborough County, Florida, asserting substantially the same claims and seeking the same relief as the Advantage MRI Complaint, including substantial attorneys' fees and costs, but limiting the proffered class to MRI providers to avoid the Class Action Fairness Act (the "St. Pete MRI Complaint"). The St. Pete MRI Complaint seeks to create separate classes for MRI providers who were paid under Direct General automobile insurance policies issued before May 30, 2010 and those who were paid under Direct General automobile insurance policies issued after May 30, 2010, when Direct General issued the 2010 Endorsement.

*The Individual Demands and Lawsuits*

23. Health care providers (as assignees of Direct General policyholders) have asserted numerous individual demands and lawsuits against Direct General in which they allege substantially the same circumstances as the Advantage MRI and St. Pete MRI complaints – specifically that Direct General committed an error when it interpreted the terms of its

automobile insurance policies sold to Florida policyholders and the PIP Statute to allow payment of medical expenses under the Fee Schedule Method rather than the Reasonable Amount Method and in addition breached its duties under its automobile insurance policies and under Florida law by failing to pay the higher amount allegedly due under the Reasonable Amount Method (collectively, the "Individual Claims").  Like the Advantage MRI Complaint and the St. Pete MRI Complaint, the Individual Claims seek substantial attorneys' fees and costs, as well as damages for the difference between the amount that Direct General paid under the Fee Schedule Method and the amount allegedly due under the Reasonable Amount Method.

24. The Advantage MRI Complaint presumably would have incorporated these Individual Claims had it not been voluntarily dismissed.  In the absence of the Advantage MRI Complaint, providers presumably instead asserted their Individual Claims.

25. Some of the Individual Claims also allege that Direct General erroneously interpreted its automobile insurance policies and the PIP Statute by first applying either the Reasonable Amount Method or the Fee Schedule Method and then applying each automobile insurance policy's deductible to the reduced amount. These claims allege that Direct General should first apply the deductible to the total medical services invoiced before applying either the Reasonable Amount Method or the Fee Schedule Method. The method proposed in these claims increases the amount due for medical services. These claims seek substantial attorneys' fees and costs, as well as damages for the difference between the amount that Direct General paid and the amount allegedly due.

26. The PIP Claims (so called herein), collectively consisting of the Advantage MRI Complaint, the St. Pete MRI Complaint, and each of the Individual Claims, are

based on or directly or indirectly arise out of or result from the same or related facts, circumstances, situations, transactions, or events or the same or related series of facts, circumstances, situations, transactions, or events.

## DIRECT GENERAL'S DEFENSE AND INDEMNITY COSTS

27. Direct General has defended itself against the PIP Claims and has resolved Individual Claims when appropriate to do so.

28. To date, Direct General has incurred approximately $10.3 million in defense expenses and approximately $62 million in settlement costs in connection with the PIP Claims.

29. Direct General has exhausted its $1 million self-insured retention through the payment of defense expenses and settlement of Individual Claims. In those settlements, Direct General has paid damages in excess of the amounts due under the Fee Schedule Method.

## THE RELEVANT INSURANCE POLICIES

30. Three policies insuring Direct General are at issue in this action: the Professional Liability Policy issued by Indian Harbor, policy no. ELU103861-08 ("the Primary Policy"), with a $10 million limit of liability and $1 million self-insured retention (policy period March 30, 2008 through March 30, 2009); the Excess Indemnity Policy issued by Houston Casualty, policy no. 24MG08A9068, providing the first $10 million in excess coverage above the Primary Policy (policy period March 30, 2008 through March 30, 2009) ("Houston Casualty Excess Policy"); and the Excess Liability Insurance Policy issued by National Specialty, policy no. IRH00EDL0802001, providing the second $10 million in excess coverage above the Primary Policy and the Houston Casualty Excess Policy (policy period March 30, 2008 through March 30,

2009) ("National Specialty Excess Policy").  (The Houston Casualty Excess Policies and the National Specialty Excess Policy are collectively identified as the "Excess Policies."  The Primary Policy and the Excess Policies are collectively identified as the "Policies."  The Primary Policy is attached as Exhibit A; the Houston Casualty Excess Policy is attached as Exhibit B; and the National Specialty Excess Policy is attached as Exhibit C.)

31. Elara Holdings, Inc. is the "**Named Insured**" on the Primary Policy.  Primary Policy Declarations Page Item 1.  (Unless otherwise indicated, all bolded terms are bolded and defined in the Primary Policy.)  The Primary Policy covers the "**Insured**."  Primary Policy Section I.  The "**Insured**" includes the "**Insurance Company**," which means the "**Named Insured**" (Elara Holdings, Inc.) and any "**Subsidiary**" of Elara Holdings, Inc.  Primary Policy Section II.(F,G).  "**Subsidiary**" means any entity that the "**Named Insured**" owns or controls, directly or through one or more **Subsidiaries**, more than 50% of the outstanding securities.  Primary Policy Section II.(R).  Elara Holdings, Inc. wholly owns Direct General Corporation, which wholly owns Direct General.  Direct General has been wholly-owned within the Elara Holdings, Inc. corporate family at all relevant times.  Therefore, Direct General is an "**Insured**" under the Primary Policy and the following-form Excess Policies.

32. The Policies provide Direct General with a total of $30 million in insurance coverage above a $1 million self-insured retention.

33. On January 5, 2009, Aon Risk Services West, Inc. ("Aon") provided notice of the Advantage MRI Complaint on behalf of Direct General to Indian Harbor through Indian Harbor's claims manager, XL Professional – Hartford ("XL").  By copy of the letter, Aon also provided notice to Houston Casualty and National Specialty.

34. Direct General provided the Insurers with notice of the Advantage MRI Complaint within the applicable policy periods.

35. On February 9, 2009, XL acknowledged receipt of Direct General's claim for coverage. XL acknowledged that Direct General is an **Insured** under the Primary Policy, provided its views on coverage, and reserved its rights. Direct General disagrees with certain positions asserted by XL in its February 9, 2009 letter.

36. On October 8, 2012, Aon provided notice of the St. Pete MRI Complaint on behalf of Direct General to all of the Insurers via their respective claims managers – XL; HCC Global Financial Products, LLC; and Ironshore Insurance Services, LLC. On September 20, 2013, XL acknowledged receipt of Direct General's correspondence and incorporated the positions stated in its February 9, 2009 letter. Direct General disagrees with certain positions asserted by XL in its September 20, 2013 letter.

37. In the same September 20, 2013 letter, XL notified Direct General that the St. Pete MRI litigation and the earlier Advantage MRI litigation would be treated as "Related Claims" under the Primary Policy: "[b]ased upon our review of the limited information provided, the above-mentioned complaint appears to relate to and arise out of the same facts, circumstances and situations as are alleged in the lawsuit noticed to Indian Harbor on January 5, 2009 and referenced in our previous correspondence dated February 9, 2009. As such, pursuant to the Policy's Related Claims provision at Section IC.(A)(4), we will be treating the complaint under the above reference number, which is the same reference number as in our prior correspondence to your attention."

38. The Primary Policy defines "**Related Claims**" as "all **Claims** for **Wrongful Acts** based on or directly or indirectly arising out of or resulting from the same or related facts, circumstances, situations, transactions, or events or the same or related series of facts, circumstances, situations, transactions, or events." Primary Policy Section II.(P). The Primary Policy further provides that "[a]ll **Related Claims** will be treated as a single **Claim** made when the earliest of such **Related Claims** was first made …." *Id*. Section IV(A)(4).

39. In December 2013, Direct General provided notice to the Insurers of the Individual Claims, which are **Related Claims** to the Advantage MRI Complaint.

40. To date, the Insurers have not paid any **Loss** to Direct General.

COVERAGE UNDER THE POLICIES

41. The Primary Policy's Insuring Agreement requires Indian Harbor to pay "**Loss** from **Claims** … for **Wrongful Acts** …." Primary Policy Section I. "'**Loss**' means damages, judgments, awards, settlements, and the **Defense Expenses** which an Insured is legally obligated to pay as a result of a **Claim**." *Id*. Endorsement No. 12. "**Claim**" includes "any civil proceeding" and "a written demand or notice to an **Insured** indicating that a person or entity intends to hold an **Insured** responsible for a **Wrongful Act**." *Id*. Section II.(B)(1),(5). "'**Wrongful Act**' means … any actual or alleged act, error, omission, misstatement, misleading statement, or breach of fiduciary duty or other duty committed by an **Insured** in rendering, or in failing to render, **Professional Services**." *Id*. Section II.(S)(1). "'**Professional Services**' means services … performed for monetary consideration pursuant to a policy of insurance …." *Id*. Section II.(M). Upon Direct General's "written request," Indian Harbor "will … pay on a current basis **Defense Expenses** for which [the Primary] Policy provides coverage." *Id*. Section

IV.(C)(3). "**Defense Expenses**" means "reasonable legal fees and expenses incurred by or on behalf of any Insured in the defense or appeal of any **Claim**...." *Id.* Section II.(C).

42. The PIP Claims allege that Direct General committed an error when it interpreted the terms of its automobile insurance policies sold to Florida policyholders and the PIP Statute to allow payment of medical expenses under the Fee Schedule Method rather than the Reasonable Amount Method. The PIP Claims further allege that Direct General breached its duties under its automobile insurance policies and under Florida law by failing to pay the higher amount allegedly due under the Reasonable Amount Method. The PIP Claims thus fall within the coverage grant of the Primary Policy because they assert **Claims** for a **Wrongful Act**: the PIP Claims allege an error (erroneous interpretation of the terms of Direct General's automobile insurance policies and the PIP Statute), as well as a breach of Direct General's contractual duties for which the policyholders paid a premium, and a breach of its duties under Florida law.

43. Direct General has incurred **Loss** in excess of the Primary Policy's self-insured retention, including **Defense Expenses** incurred in connection with the PIP Claims.

44. Coverage under the Excess Policies follows the form of the provisions of the Primary Policy. *See* Houston Casualty Excess Policy Insuring Agreement, Ex. B; National Specialty Excess Policy Insuring Agreement, Ex. C.

45. Defending and settling the PIP Claims has caused Direct General to incur **Loss** in excess of the limits of liability in the Policies.

## COUNT I

## (DECLARATORY JUDGMENT AS TO INDIAN HARBOR AND HOUSTON CASUALTY – PAST DEFENSE EXPENSES)

46. Direct General incorporates and re-alleges all preceding paragraphs as if fully set forth herein.

47. An actual and justiciable controversy exists between Direct General and Indian Harbor and Houston Casualty regarding Indian Harbor's and Houston Casualty's obligations to pay Direct General's past **Defense Expenses** for the PIP Claims.

48. Direct General has incurred approximately $10.3 million in **Defense Expenses** as defined in the Primary Policy. Of this amount, $9.3 million is in excess of the Primary Policy's $1 million self-insured retention.

49. Direct General seeks reimbursement of approximately $9.3 million in **Defense Expenses** incurred to date from Indian Harbor up to a $10 million limit of liability. To the extent that the Primary Policy's limits have been eroded by the payment of other claims, Direct General seeks reimbursement of any **Defense Expenses**, in excess of the $10 million limit of liability in the Primary Policy, from Houston Casualty, up to a $10 million limit of liability.

50. Indian Harbor has a duty under the Primary Policy to pay Direct General's **Defense Expenses** in excess of the self-insured retention, as incurred, upon Direct General's written request, up to a $10 million limit of liability.

51. Houston Casualty has a duty under the Houston Casualty Excess Policy to pay Direct General's **Defense Expenses** in excess of the $10 million limit of liability in the

Primary Policy, as incurred, upon Direct General's written request, up to a $10 million limit of liability.

52. Direct General petitions this Court to declare that Indian Harbor has an obligation to reimburse Direct General for its past **Defense Expenses** for the PIP Claims, in excess of the Primary Policy's self-insured retention, up to a $10 million limit of liability.

53. Direct General petitions this Court to declare that Houston Casualty has an obligation to reimburse Direct General for its past **Defense Expenses** for the PIP Claims, in excess of the $10 million limit of liability in the Primary Policy, up to a $10 million limit of liability.

## COUNT II

### (DECLARATORY JUDGMENT AS TO ALL DEFENDANTS – FUTURE DEFENSE EXPENSES)

54. Direct General incorporates and re-alleges all preceding paragraphs as if fully set forth herein.

55. An actual and justiciable controversy exists between Direct General and the Insurers regarding the Insurers' obligation to pay Direct General's future **Defense Expenses** for the PIP Claims.

56. Indian Harbor has a duty under the Primary Policy to pay Direct General's **Defense Expenses** in excess of the self-insured retention, as incurred, upon Direct General's written request, up to a $10 million limit of liability.

57. Houston Casualty has a duty under the Houston Casualty Excess Policy to pay Direct General's **Defense Expenses** in excess of the $10 million limit of liability in the

Primary Policy, as incurred, upon Direct General's written request, up to a $10 million limit of liability.

58. National Specialty has a duty under the National Specialty Excess Policy to pay Direct General's **Defense Expenses** in excess of the $10 million limit of liability in the Houston Casualty Excess Policy, as incurred, upon Direct General's written request, up to a $10 million limit of liability.

59. Defending the PIP Claims will cause Direct General to incur **Defense Expenses** in excess of the $10 million limit of liability in the Primary Policy, such that coverage under the Excess Policies will be triggered.

60. Direct General petitions this Court to declare that the Insurers have an obligation to pay future **Defense Expenses** for the PIP Claims, as incurred, upon Direct General's written request, up to their respective limits of liability.

### COUNT III

#### (DECLARATORY JUDGMENT AS TO ALL DEFENDANTS – INDEMNITY)

61. Direct General incorporates and re-alleges all preceding paragraphs as if fully set forth herein.

62. An actual and justiciable controversy exists between Direct General and the Insurers regarding their obligation to pay Direct General's settlements of certain Individual Claims.

63. Indian Harbor has a duty under the Primary Policy to pay Direct General's **Loss**, including damages, judgments, awards, and settlements, in excess of the self-insured retention, up to a $10 million limit of liability.

64. Houston Casualty has a duty under the Houston Casualty Excess Policy to pay Direct General's **Loss**, including damages, judgments, awards, and settlements, in excess of the $10 million limit of liability in the Primary Policy, up to a $10 million limit of liability.

65. National Specialty has a duty under the National Specialty Excess Policy to pay Direct General's **Loss**, including damages, judgments, awards, and settlements, in excess of the $10 million limit of liability in the Houston Casualty Excess Policy, up to a $10 million limit of liability.

66. Direct General has incurred **Loss** in excess of the Primary Policy's self-insured retention and in excess of the limits of liability in the Primary Policy and the Excess Policies for settlements of certain Individual Claims.

67. Coverage under all the Policies has been triggered.

68. Direct General seeks reimbursement from the Insurers for the **Loss** that it has incurred to date for settlements of certain Individual Claims, totaling approximately $62 million, in excess of the Primary Policy's self-insured retention, up to their respective limits of liability.

69. Direct General petitions this Court to declare that the Insurers have an obligation to reimburse Direct General for its settlements of certain Individual Claims, in excess of the Primary Policy's self-insured retention, up to their respective limits of liability.

## COUNT IV

### (DECLARATORY JUDGMENT AS TO ALL DEFENDANTS – FUTURE INDEMNITY)

70. Direct General incorporates and re-alleges all preceding paragraphs as if fully set forth herein.

71. An actual and justiciable controversy exists between Direct General and the Insurers regarding the Insurers' obligation to pay Direct General's future damages, judgments, awards, and settlements incurred in connection with the PIP Claims.

72. Indian Harbor has a duty under the Primary Policy to pay Direct General's **Loss**, including damages, judgments, awards, and settlements, in excess of the self-insured retention, up to a $10 million limit of liability.

73. Houston Casualty has a duty under the Houston Casualty Excess Policy to pay Direct General's **Loss**, including damages, judgments, awards, and settlements, in excess of the $10 million limit of liability in the Primary Policy, up to a $10 million limit of liability.

74. National Specialty has a duty under the National Specialty Excess Policy to pay Direct General's **Loss**, including damages, judgments, awards, and settlements, in excess of the $10 million limit of liability in the Houston Casualty Excess Policy, up to a $10 million limit of liability.

75. Direct General petitions this Court to declare that the Insurers have an obligation to pay Direct General's future damages, judgments, awards, and settlements incurred in connection with the PIP Claims, in excess of the Primary Policy's self-insured retention, up to their respective limits of liability.

## DEMAND FOR JURY TRIAL

76. Direct General demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Direct General prays as follows:

A. That this Court declare that Indian Harbor has an obligation to reimburse Direct General for its past **Defense Expenses** for the PIP Claims, in excess of the Primary Policy's self-insured retention, up to a $10 million limit of liability.

B. That this Court declare that Houston Casualty has an obligation to reimburse Direct General for its past **Defense Expenses** for the PIP Claims, in excess of the $10 million limit of liability in the Primary Policy, up to a $10 million limit of liability.

C. That this Court declare that Defendants have an obligation to pay future **Defense Expenses** for the PIP Claims, as incurred, upon Direct General's written request, up to their respective limits of liability;

D. That this Court declare that Defendants have an obligation to reimburse Direct General for its settlements of certain Individual Claims, in excess of the Primary Policy's self-insured retention, up to their respective limits of liability;

E. That this Court declare that Defendants have an obligation to pay Direct General's future damages, judgments, awards, and settlements incurred in connection with the PIP Claims, in excess of the Primary Policy's self-insured retention, up to their respective limits of liability;

F. That this Court award Direct General the costs and expenses (including attorneys' fees pursuant to Fla. Stat. § 627.428) incurred in bringing this action; and

G. For such other and further relief as this Court deems just and equitable.

                                                    Respectfully submitted,

                                                    <u>s/Steven W. Davis</u>
                                                    Steven N. Zack (Fla. Bar No. 145215)
                                                    Steven W. Davis (Fla. Bar No. 347442)
                                                    Tyler E. Ulrich (Fla. Bar No. 94705)
                                                    Boies, Schiller & Flexner LLP
                                                    100 S.E. 2nd Street, Suite #2800
                                                    Miami, Florida   33131
                                                    Telephone:  (305) 539 8400
                                                    Facsimile:  (305) 539-1307
                                                    szack@bsfllp.com
                                                    sdavis@bsfllp.com
                                                    tulrich@bsfllp.com

                                                  *Attorneys for Plaintiffs*

OF COUNSEL (pro hac application pending)
Katherine J. Henry
Bradley Arant Boult Cummings LLP
1615 L Street NW
Washington, D.C.   20036
Telephone:  (202) 719-8244
Facsimile: (202) 719-8344
khenry@babc.com