UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | | |
|---|---|---|
| DIRECT GENERAL INSURANCE COMPANY, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.:  1:14-cv-20050-MGC |
| | ) | |
| | ) | Judge Marcia G. Cooke |
| INDIAN HARBOR INSURANCE | ) | |
| COMPANY, HOUSTON CASUALTY | ) | Magistrate Judge Edwin G. Torres |
| INSURANCE COMPANY and | ) | |
| NATIONAL SPECIALTY INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

---

**DEFENDANTS' JOINT MOTION FOR SUMMARY JUDGMENT AND
INCORPORATED MEMORANDUM IN SUPPORT**

---

Defendants Houston Casualty Company ("Houston Casualty") and National Specialty Insurance Company ("National Specialty") hereby file their Joint Motion for Summary Judgment and Incorporated Memorandum in Support pursuant to Federal Rule of Civil Procedure 56.

## I.      INTRODUCTION

On January 1, 2008, Florida amended its personal injury protection ("PIP") statute to establish a protocol for the payment of policy benefits under automobile insurance policies. Almost immediately, Direct General ("Direct") began receiving statutory demand letters alleging that it had not paid the full amount of benefits owed under the PIP statute and threatening to sue Direct if it did not make full payment.  Direct ultimately received over 70,000 such claims (the "Individual Claims"), which it unilaterally settled for more than $62 million, without advising defendants of those settlements.  Then, after six years, Direct filed this action seeking insurance coverage for the Individual Claims and two related class actions (the "PIP Claims").

Defendants first learned of the magnitude of the PIP Claims when Direct provided them with a 1,200 page spreadsheet setting forth the 70,000 plus Individual Claims in late December 2013.  Direct has consistently maintained that all the PIP Claims must be combined into a single "Related Claim" under the policies issued by Defendants and that such single Related Claim must be deemed to have been made during the term of the policies covering the March 30, 2008 to March 30, 2009 policy year (the "2008-09 Policies").  Direct took this position because if the PIP Claims are not combined as a group into a single Related Claim, then each PIP Claim is subject to a separate $1 million retention.

Defendants later discovered that the spreadsheet submitted by Direct had been filtered or otherwise altered by Direct to remove all demands it received *before* the 2008-09 Policies incepted (the "Pre-Policy Claims").  The significance of this discovery is that if the PIP Claims

1

and the Pre-Policy Claims constitute a single Related Claim, then they must be deemed to have been made ***prior*** to the inception date of the 2008-09 Policies, thereby precluding coverage under those Policies.  Before Direct understood the significance of this issue, it took the position that ***all*** of the 70,000 plus Individual Claims were factually indistinguishable.  But once it realized that this position might jeopardize coverage under the 2008-09 Policies, Direct reversed course and attempted to manufacture an argument that the Pre-Policy Claims are somehow entirely distinct from the PIP Claims identified in its complaint.

This argument is completely at odds with Direct's admissions in this case.  It is also at odds with the evidence, which reveals that there are no material factual distinctions between the Pre-Policy Claims and many of the later Individual Claims that Direct concedes are Related Claims.  Moreover, since ***all*** the PIP Claims and Pre-Policy Claims relate to Direct's failure to pay the proper amount of benefits in underlying PIP policies following the January 1, 2008 revision to the PIP statute, they all must be treated as a single Related Claim first made prior to the inception of the 2008-09 Policies, and thus fall outside the scope of coverage under the Policies.

Even if Direct can somehow avoid this result, its failure to comply with the consent requirements in the 2008-09 Policies forfeits any coverage that might otherwise exist.  In particular, the Policies provide that no defense expenses may be incurred or settlements made without the consent of the Defendants.  In clear disregard of these requirements, Direct allegedly incurred defense expenses totaling more than $10 million and paid settlements totaling more than $62 million before the Individual Claims were even reported to Defendants.

Finally, coverage is also barred for the PIP Claim settlements because they reflect the payment of additional benefits due to policyholders under the policies issued by Direct.  These

amounts do not constitute "Loss" under the Policies and, as a matter of public policy, Direct cannot refuse to honor its pre-existing contractual obligations to its policyholders and then seek coverage for its breaches.

## II.    LEGAL STANDARDS

Summary judgment will be granted when the movant demonstrates that there are no genuine issues of material fact to be decided at trial. *Mt. Hawley Ins. Co. v. Dania Distribution Ctr., Ltd.*, 763 F. Supp. 2d 1359, 1363-64 (S.D. Fla. 2011) *aff'd*, 513 F. App'x 890 (11th Cir. 2013).  Courts commonly grant summary judgment where, as here, the principal issue is whether a group of related claims was first made prior to the inception of coverage under a policy. *See, e.g., KB Home v. St. Paul Mercury Ins. Co.*, 621 F. Supp. 2d 1271 (S.D. Fla. 2008), *aff'd sub nom. KB Home v. The Travelers Ins. Co.*, 339 F. App'x 910 (11th Cir. 2009); *Cracker Barrel Old Country Store, Inc. v. Cincinnati Ins. Co.*, 499 F. App'x 559 (6th Cir. 2012).

Tennessee law applies to the interpretation of the 2008-09 Policies.  While an insurance carrier bears the burden of establishing the applicability of a policy exclusion, the policyholder bears the initial burden of proving that a claim falls within the scope of coverage under the policy. *See, e.g., Massachusetts Mut. Life Ins. Co. v. Jefferson*, 104 S.W.3d 13, 22 (Tenn. Ct. App. 2002); *Jones v. State Farm Fire & Cas.*, No. M2014-00208-COAR-3-CV, 2014 WL 7465673, at *2 (Tenn. Ct. App. Dec. 30, 2014).  The record establishes as a matter of law that Direct cannot satisfy that burden.

## III.    SUMMARY OF MATERIAL FACTS

### A.    The Policies[1]

Direct seeks coverage under a "program" of insurance for Claims first made during a

---

[1]  Capitalized terms used herein refer to terms that are defined in the policies.

policy period of March 30, 2008 to March 30, 2009.  Defendants' Statement of Material Facts
("Stmt.") at ¶¶ 1, 4.  This program consists of a primary policy issued by Indian Harbor
Insurance Company with a $10 million limit of liability, subject to a $1 million self-insured
retention that applies to each Claim.  *Id.* ¶ 2.  Houston Casualty issued a first excess policy that
provides an additional $10 million limit of liability in excess of the limits under the Indian
Harbor policy.  *Id.*  National Specialty issued a second excess policy that provides an additional
$10 million limit of liability in excess of the underlying $20 million in coverage.  *Id.*  Generally,
the Indian Harbor policy sets forth the terms and conditions for coverage and the excess policies
incorporate those terms and conditions unless they expressly provide to the contrary.  *Id.* ¶ 3.  All
of the relevant provisions here are contained in the Indian Harbor primary policy and have been
incorporated into the excess policies.[2]  *Id.*

Importantly, these policies provide "claims-made" coverage, meaning that a Claim must
be first made or deemed to have been made during the term of the policy in order to trigger
coverage.  *Id.* ¶ 4.  A key feature of these policies is that Claims that are factually related must be
combined into a single Claim that is deemed to have been made when the first such Related
Claim was made.  *Id.* ¶ 5.  The Related Claim provision in the 2008-09 Policies broadly defines
Related Claims to include all Claims for Wrongful Acts that ***even indirectly*** arise out of a related
series of facts, circumstances, situations, transactions or events.  *Id.* ¶ 6.  Together, these
provisions guarantee that a group of Related Claims will only trigger coverage under the single
policy in force when the first Related Claim was made.  These provisions also protect the

---

[2]  Direct maintained a separate insurance program for the March 30, 2007 to March 30, 2008
policy year but has never sought coverage for the PIP Claims under that program.  Also, Indian
Harbor is no longer a party to these proceedings because it reached a settlement with Direct at an
earlier stage of this case.  That settlement is not directly relevant here.  *See, e.g., Allmerica Fin.
Corp. v. Certain Underwriters at Lloyd's*, 871 N.E.2d 418, 428 (Mass. 2007) (follow-form
excess liability insurer not bound by the primary insurer's decision to settle).

policyholder from the hardship of having to satisfy multiple retentions, because only a single

retention applies to a group of Related Claims.

**B.     The PIP Claims**

Direct issues auto insurance policies that provide personal injury protection to its

policyholders.  *Id.* ¶ 13.  Direct was obligated to pay benefits under those policies to its Florida

policyholders in accordance with a statute that went into effect on January 1, 2008 (Fla. Stat. §

627.736).  *Id.* ¶ 14.  Direct seeks coverage for Claims alleging that Direct did not pay the proper

amount of benefits owed under the PIP statute.  *Id.* ¶ 36.  Those Claims include the following

lawsuits and/or statutory demand letters generated by policyholders or their service providers,

described below.

**1.     The Advantage MRI Action**

On June 19, 2008, Advantage Open MRI filed an action against Direct in Florida state

court (the "Advantage MRI Action").  *Id.* ¶ 15.  The proposed Second Amended Complaint

described a class period that began on January 1, 2008, coinciding with the effective date of the

PIP statute, and sought the certification of a class consisting of all MRI healthcare providers that

had not received payment for the full allowable amount of benefits owed by Direct under the PIP

statute.  *Id.* ¶ 16.  It also sought declaratory and injunctive relief regarding the proper payment of

benefits, but did not seek damages.  *Id.*  On January 5, 2009, during the term of the 2008-09

Policies, Direct General gave notice to the Defendants of the Advantage MRI Action.  *Id.* ¶ 20.

The Advantage MRI Action was voluntarily dismissed on November 23, 2010.  *Id.* ¶ 17.

**2.     The St. Pete MRI Action**

On September 11, 2012, MRI Associates of St. Pete filed a class action against Direct,

with a class period beginning on January 1, 2008 (the "St. Pete MRI Action").  *Id.* ¶¶ 18-19.

This action sought certification of a class of MRI providers who were underpaid by Direct based on an improper calculation of benefits under the PIP statute. *Id.* ¶ 19. More specifically, the action alleged that Direct misinterpreted the PIP statute by paying PIP claims pursuant to the "Fee Schedule Method" rather than the "Reasonable Amount Method." *Id.* The complaint sought declaratory and injunctive relief regarding the alleged improper calculation of benefits. *Id.* It also alleged a direct breach of contract cause of action seeking the payment of additional benefits due. *Id.*

On October 8, 2012, Direct General gave notice to the Defendants of the St. Pete MRI Action. *Id.* ¶ 20. Although that suit was filed well after the expiration of the 2008-09 Policies, Defendants acknowledged that the St. Pete MRI Action and the Advantage MRI Action constituted Related Claims deemed to have been first made during the term of the 2008-09 Policies. *Id.*

### 3.    The Individual Claims and the Pre-Policy Claims

On December 30, 2013, Direct wrote Defendants stating that it was giving "notice of demands and complaints asserted against [Direct] contending that [Direct] misinterpreted the scope of its obligation to pay personal injury protection ('PIP') expenses under automobile insurance policies sold to Florida policyholders." *Id.* ¶ 21. The letter further stated that ***each*** of the Individual Claims contained on an accompanying spreadsheet constituted Related Claims, along with the Advantage and St. Pete MRI Actions, and that the Individual Claims therefore were to be treated as having been made during the term of the 2008-09 Policies. *Id.*

Following the letter was a notice spreadsheet that was more than 1,200 pages long and listed more than 70,000 Individual Claims, which corresponded with approximately 26,000 claim numbers. *Id.* ¶ 22. Each claim number corresponds with a separate automobile accident. *Id.*

The copy of the spreadsheet listed only Claims made after April 3, 2008, four days after the inception of the 2008-09 Policies. *Id.* Defendants later discovered that the spreadsheet had been "filtered" or otherwise altered to exclude references to demand letters that Direct received, including from some of the same claimants, prior to the inception of the 2008-09 Policies. *Id.* ¶ 23. Direct General ultimately produced copies of 30 of these demand letters and portions of the claim files associated with those Pre-Policy Claims. *Id.* ¶ 24. Direct also produced a sample of 532 claim files. *Id.* ¶ 26.

Before producing these claim files, Direct employed a team of contract lawyers to code the demand letters and complaints contained in the files. *Id.* ¶ 27. Applying a review protocol, Direct's reviewers determined whether a demand or complaint contained "permissible" allegations, and therefore must be considered a Related Claim. *Id.* The criteria applied by the reviewers was so broad that a demand or complaint was deemed to be permissible even if it was only characterized as a "General PIP" claim, meaning that it sought reimbursement for medical services under the PIP statute but lacked any other specificity.[3] *Id.* ¶ 34.

## IV.    ARGUMENT

### A.    The Pre-Policy Claims Constitute Claims for Wrongful Acts

The Pre-Policy Claims constitute Claims for Wrongful Acts as those terms are defined in the 2008-09 Policies. The Policies define "Claim" in relevant part to mean "a written demand or notice to an Insured indicating that a person or entity intends to hold an Insured responsible for a Wrongful Act." *Id.* ¶ 7. The term Wrongful Act is then broadly defined to include "any actual

---

[3] As discussed more fully *infra*, the designation of an Individual Claim by Direct in discovery as containing "permissible" allegations does not detract from prior acknowledgments in its pleadings that all of the Individual Claims constitute Related Claims. Moreover, the question of whether Direct may rely on its unilaterally selected sample of claim files or must present evidence on a claim-by-claim basis is an issue for another day. Notwithstanding, the limited subset of documents produced thus far by Direct suffice to support the instant motion.

or alleged act . . . or omission" or breach of duty committed during the rendering of Professional Services. *Id.* ¶ 8. Professional Services is in turn defined as "services performed by the Insurance Company . . . for a policyholder, customer or client of the Insurance Company … performed for monetary consideration pursuant to a policy of insurance." *Id.* ¶ 9.

The demand letters for the Pre-Policy Claims clearly meet this standard because they expressly allege that benefit payments under the PIP statute are overdue and that litigation will ensue if the payments are not made. *Id.* ¶¶ 28, 30-31. In other words, the demand letters indicate that Direct will be held responsible for the act or omission of not making appropriate payments, which constitutes a breach of its obligations under the statute. In fact, the spreadsheet of Individual Claims submitted by Direct for coverage lists a multitude of these pre-suit demand letters. *Id.* ¶ 22. This is significant because Direct has admitted in its pleadings and correspondence that all of the PIP Claims listed on that spreadsheet constitute Claims for Wrongful Acts:

- The PIP Claims fall within the coverage grant of the policies because they assert Claims for Wrongful Acts. *Id.* ¶ 41.

- The Individual Claims constitute Claims for Wrongful Acts in rendering Professional Services. *Id.* ¶ 42.

Tennessee law prohibits an insured from doing exactly what Direct seeks to do here, namely, to take an expansive view of the definition of Claim to bring claims within the scope of coverage and to then disavow that view in order to avoid the adverse consequences of a related claim analysis. *See Cracker Barrel*, 499 F. App'x at 567-68.

## B. The Pre-Policy Claims and Individual Claims Collectively Constitute a Single, Related Claim First Made Prior to the Inception of the 2008-09 Policies

Through Direct's admissions and the documents it produced in discovery, it is clear as a matter of law that *all* of the PIP demands and lawsuits constitute a single Related Claim first

made prior to the inception of the 2008-09 Policies.  All of them directly or indirectly arise out a series of related facts, circumstances, transactions or events -- including the systematic failure by Direct to pay the proper amount of benefits owed to its policyholders under their respective PIP insurance policies, following the January 1, 2008 revision to the PIP statute.  Importantly, Direct has acknowledged that ***all*** underlying claims for PIP coverage submitted after January 1, 2008 (*i.e.* the Pre-Policy Claims and the Individual Claims) share the common factual bond of having been adjusted using the same Fee Schedule Method that lies at the core of its Related Claim analysis.  Stmt. ¶ 14.

      **1.**        **The Related Claim provision must be broadly construed**

The Related Claim provision in the 2008-09 Policies states that Related Claims include "all Claims for Wrongful Acts based on or directly or indirectly arising out of or resulting from … the same or related series of facts, circumstances, situations, transactions or events."  Stmt. ¶ 6. Cases applying similar provisions have held that only a broad logical or causal factual nexus must exist to combine separate claims together into a single related claim.  *See, e.g., Gregory v. Home Ins. Co.*, 876 F.2d 602, 606 (7th Cir. 1989); *Westport Ins. Corp. v. Coffman, No.* C2-05-1152, 2009 WL 243096, at *8 (S.D. Ohio Jan. 29, 2009); *TIG Ins. Co. v. Merryland Childcare and Dev. Ctr., Inc.*, No. 04-2666B, 2007 WL 316571, at *6 (W.D. Tenn. Jan. 31, 2007).  This broad construction is particularly warranted here because multiple Claims are deemed to be Related Claims under the 2008-09 Policies even when they ***indirectly*** arise out of a related series of facts, circumstances, transactions or events.

Moreover, because the Related Claims must only involve a "related series" of facts or circumstances, the extent to which different Claims do not involve "identical" facts or circumstances is immaterial.  *See Capital Growth Fin. LLC v. Quanta Specialty Lines Ins. Co.*,

07-80908-CIV, 2008 WL 2949492, at *4 (S.D. Fla. July 30, 2008); *HR Acquisition I Corp. v. Twin City Fire Ins. Co.*, 547 F.3d 1309, 1316 (11th Cir. 2008); *see also Highwoods Props, Inc. v. Exec. Risk Indem., Inc.*, 407 F.3d 917, 924 (8th Cir. 2005) ("series" means "a number of things or events of the same class coming one after another in special or temporal succession"). Thus, where the "harms alleged" in different suits have a "common basis," the claims are related claims, regardless of the identity of the plaintiffs or the legal theories advanced. *WFS Fin., Inc. v. Progressive Cas. Ins. Co., Inc*., 232 F. App'x 624, 625 (9th Cir. 2007).

For instance, in *Capital Growth*, 2008 WL 2949492 at *4, the Court examined a variety of cases from around the country addressing the issue of "relatedness." Although the specific analysis varies case by case, Judge Hurley found "a common thread" which "views 'relatedness' as a concept encompassing both logical and causal connections, an assessment which typically involves consideration of whether the acts in question are connected by time, place, opportunity, pattern, *and perhaps most importantly, by method or modus operandi*." *Id.* (citations omitted; emphasis added). Particularly where class actions are involved, if the "harms alleged . . . are causally related and do not present such an 'attenuated or unusual' relationship that a reasonable insured would not have expected the claims to be treated as a single claim under the policy," then they are properly considered Related Claims. *WFS Fin., Inc*., 232 F. App'x at 625; *see also Am. Med. Sec., Inc. v. Exec. Risk Specialty Ins. Co*., 393 F. Supp. 2d 693, 707 (E.D. Wis. 2005) (underlying lawsuits, some of which were class actions, were all related because, despite involving different plaintiffs and different facts, all flowed from Insured's common practice of underwriting renewals according to individual risk).

For all of these reasons, the Pre-Policy Claims and the PIP Claims clearly constitute a single Related Claim in accordance with the broad reach of this provision.

## 2.      Direct has repeatedly alleged that each of the Individual Claims collectively constitutes a single Related Claim

Direct itself argued in favor of a broad construction of the Related Claim provision when it was trying to bring all of the Individual Claims within the scope of coverage. *See* Stmt. ¶ 43. In fact, Direct has repeatedly admitted that ***all*** of the more than 70,000 Individual Claims, along with the Advantage MRI Action and St. Pete MRI Action, are Related Claims that must be treated as a single Claim:

- In its December 30, 2013 notice letter, Direct stated that "the demands and complaints on the spreadsheet on the enclosed cd are based on or directly or indirectly arising out of or resulting from the same or related facts, circumstances, situations, transactions, or events or the same or related series of facts, circumstances, situations, transactions, or events as the [Advantage MRI and St. Pete MRI Actions] and therefore are related claims falling within the same 2008-09 policy period." Stmt. ¶ 21.

- Direct's Complaint in this action alleges that each of the Individual Claims and the Advantage MRI Action and the St. Pete MRI Action are "based on or directly or indirectly arise out of or result from the same or related facts, circumstances, situations, transactions, or events or the same or related series of facts, circumstances, situations, transactions, or events." *Id.* ¶ 39.

- The Complaint also states that the Individual Claims allege "substantially the same circumstances" as the Advantage MRI Action and the St. Pete MRI Action. *Id.* ¶ 37.

- The Complaint further alleges that the Individual Claims and the Advantage MRI Action are Related Claims. *Id.* ¶ 40.

Having repeatedly admitted that all of the Individual Claims are closely related to each other on their facts, Direct cannot now controvert that position. *See, e.g.*, *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1177-78 (11th Cir. 2009) (assertions in pleading were binding admissions and party "cannot now claim the exact opposite to be true" when it is to their advantage); *Best Canvas Products & Supplies, Inc. v. Ploof Truck Lines, Inc.*, 713 F.2d 618, 621 (11th Cir. 1983) (citations omitted).

11

**3.     There are no viable factual distinctions between the admittedly related Individual Claims and the Pre-Policy Claims**

These prior admissions by Direct defeat its attempt to obtain coverage in this action because even the most straightforward comparison of the Pre-Policy Claims and the Individual Claims listed on the notice spreadsheet confirms that they are all part of an ongoing series of related facts and circumstances.  Indeed, in some cases, the Pre-Policy Claims and later Individual Claims are ***identical*** in substance.  Consequently, if the Individual Claims constitute Related Claims, so must the Pre-Policy Claims.  Examples of this factual overlap include the following:

*First*, certain of the Pre-Policy Claims are ***substantively identical*** to Individual Claims on the spreadsheet that have been acknowledged by Direct as Related Claims.  Specifically, three of the Pre-Policy Claims are statutory pre-suit demand letters sent by the Law Office of Gonzalez & Associates.  *Id*. ¶ 28.  According to the notice spreadsheet, the Gonzalez firm sent over 4,400 additional demand letters after the inception of the 2008-09 Policies.  *Id.*  Many of those later demand letters are identical in substance and form to the Pre-Policy Claims, except for the names of the claimants and the amounts at issue.  *Id.*  Moreover, many of the same demand letters were coded by Direct's reviewers as containing "permissible" allegations, which is further evidence that Direct intended to treat them as Related Claims.  *Id.*  Because the later demand letters are all asserted to be Related Claims, the substantively identical pre-policy demand letters sent by the same firm are also necessarily Related Claims.

*Second*, as the attached excerpt of the notice spreadsheet demonstrates (*see* Ex. 3.D),[4] nearly all of the Pre-Policy Claims were the subject of claims activity that continued ***after*** the inception of the 2008-09 Policies.  That is, Direct received initial demand letters prior to the

_____

[4] On February 26, 2015, Defendants filed a motion for leave to file Exhibits 1.C-G, 1.P-T and 3.A-I to this motion for summary judgment under seal.  These exhibits were filed under seal as attachments to that motion for leave.

inception date of the Policies, and then received additional demand letters associated with the same accidents after the Policies' inception date.  Thus, 28 Pre-Policy Claims share the same claim number as one of the Individual Claims listed on the notice spreadsheet.  *Id.* ¶ 29.  Since Direct assigned unique claim numbers to each accident, demand letters and lawsuits under the same claim number must arise out of a related series of facts, circumstances or events.  Because Direct has admitted that all the Individual Claims on the spreadsheet are Related Claims, these causally connected Pre-Policy claims must be Related Claims as well.

*Third*, one of the Pre-Policy Claims evolved into a lawsuit against Direct that was filed after the inception of the 2008-09 Policies (the "Altamonte Suit").  *Id.* ¶ 30.  Both the Pre-Policy Claim and the Altamonte Suit involve the payment of benefits for the ***same services to the same claimant by the same provider in connection with the same accident***.  Moreover, Direct attached the Altamonte Suit to its Complaint as an "exemplar" of the Related Claims for which it seeks coverage.  *Id.*  Because the Pre-Policy Claim arises out of the same accident at issue in the Altamonte Suit, it must also be a Related Claim.  *See*, *e.g.*, *Westrec Marina Mgmt., Inc. v. Arrowood Indem. Co.*, 163 Cal. App. 4th 1387, 1394-96 (2008) (demand letter and subsequent lawsuit by same claimant were part of the same claim and/or related claims).

*Fourth*, yet another of the Pre-Policy Claims is a demand letter seeking payment for some of the very same benefits sought in two later demand letters that are listed on the spreadsheet and have been acknowledged by Direct as Related Claims.  *Id.* ¶ 31.  Multiple demand letters seeking payment of the same benefits clearly constitute Related Claims.

In addition, apart from a factual comparison of the Pre-Policy Claims and a sampling of the Individual Claims listed on the spreadsheet, Direct has acknowledged that all of the Individual Claims are related to the Advantage MRI Action.  *Id.* ¶ 40.  In fact, Direct maintains

13

that all of the Individual Claims could have been asserted in the Advantage MRI Action. *Id.* ¶ 38. If the Individual Claims could have been brought in that action, then the Pre-Policy Claims also could have been brought in that action because they were all made after the class period commenced on January 1, 2008. And, if the Pre-Policy Claims could have been brought in the ***same class action*** as the Individual Claims, they necessarily constitute a single Related Claim.

### 4. Direct cannot now contradict its previous characterization of the PIP Claims in its Complaint

Direct has attempted to deflect the legal impact of the Pre-Policy Claims by arguing that the PIP demands and lawsuits can only constitute Related Claims if they contain express allegations that Direct mistakenly paid PIP benefits pursuant to the Fee Schedule Method rather than the Reasonable Amount Method. *Id.* ¶ 25. In contrast, the Complaint broadly alleges that ***all*** of the Individual Claims constitute Related Claims, without the limitation that Direct now seeks to impose. *See id.* ¶ 39. Direct may not now make assertions "in direct contradiction" to its prior admissions, and may not avoid them "simply by filing a motion for summary judgment asserting a position inconsistent with its own admission." *Dice v. Weiser Sec. Servs., Inc.*, No. 06-61133-CIV, 2008 WL 269513, at *3 (S.D. Fla. Jan. 29, 2008).

This new-found characterization of the PIP Claims fails in any event because many of the 70,000 Individual Claims that Direct has acknowledged as Related Claims make ***absolutely no reference*** to the Fee Schedule Method, the Reasonable Amount Method or the improper application of any other methodology resulting in an underpayment of benefits. For example:

*First*, the Individual Claims on the spreadsheet include many demand letters asserting that the claimant has not yet been paid ***any*** benefits. *Id.* ¶ 32. Because these demands precede the payment of benefits, Direct cannot argue that they involve a failure to apply any particular payment methodology. That is, an improper methodology cannot be employed before the

payment is made.  These generic demands for payment are no different in character than the Pre-Policy Claims.

*Second*, 26 of the 30 individual complaints attached to Direct's First Amended Complaint as examples of Related Claims do not contain ***any*** allegations regarding a specific payment methodology.  *Id.* ¶ 33.  Because Direct did not consider such allegations to be a prerequisite to classifying an Individual Claim as a Related Claim, the absence of such allegations from a Pre-Policy Claim cannot be a distinguishing factor.

*Third*, Direct utilized coding criteria in this action that categorized Individual Claims as "permissible" claims that were eligible for coverage so long as they contained "General PIP" allegations seeking reimbursement under the PIP statute, without any other required specificity.  *Id.* ¶ 34.  Because Direct used this "catch-all" category to designate Individual Claims as Related Claims (*id.* ¶ 27), the Pre-Policy Claims must also be Related Claims if they satisfy the threshold requirement of seeking reimbursement under the PIP statute, irrespective of whether they refer to a specific payment methodology or a more general misapplication of the PIP statute.

The record shows, then, that there is no distinction between the Pre-Policy Claims and the Individual Claims.  Rather, the PIP demands and lawsuits, as a group, broadly involve allegations that Direct did not make adequate payments of PIP benefits under its policies, all of which occurred after Direct implemented the Fee Schedule Method to adjust claims.  Moreover, even if the Pre-Policy Claims do not expressly allege that Direct applied an incorrect payment methodology, they nonetheless are logically and causally linked with later PIP Claims, as both sets of Claims directly or indirectly arise from a related series of facts, circumstances, transactions or events and constitute Related Claims.

Finally, since Direct used a broad definition for classifying the Individual Claims as Related Claims, it cannot now apply a more restrictive definition to prevent the Individual Claims from relating back to the Pre-Policy Claims. This precise issue was addressed by the Sixth Circuit in *Cracker Barrel,* 499 F. App'x at 567-68, where the insured tried to bundle a group of claims together to procure coverage despite the existence of pre-policy claims.

The court held that the insured could not use the related claim provision to group all the related claims together within the policy period, while ignoring that the related claim provision barred coverage because the first such related claim was made prior to the inception of coverage:

> According to [the insured], whenever many claims are based upon interrelated wrongful acts (and thus are considered a single claim), such "claim" will always be covered because any claim based on a wrongful act, interrelated or not, falling outside the policy period is a nullity, and the only claims that count for purposes of determining when a claim is made are those made within the policy period. Under [the insured's] rules, the insured always wins.

*Id.* at 567.

The court then held that a group of related claims could only be deemed first made once, and that coverage was barred because the single combined claim was deemed to have been first made prior to the inception of the policy. This rationale applies to bar coverage here for Related Claims that were first made before the inception of the Policies. *See also United States v. A.C. Strip*, 868 F.2d 181, 189-90 (6th Cir. 1989) (related claim made prior to policy period precluded coverage); *TIG Ins. Co.*, 2007 WL 316571, at *6 (all acts of sexual abuse were one occurrence prior to policy period).

**C.    Direct Breached the Consent Provisions in the Policies**

The consent provision in Section IV(C)(1) states that "no Defense Expenses may be incurred and no settlement of any Claim may be made without the Insurer's consent, such consent not to be unreasonably withheld." Stmt. ¶ 11. Subsection (C)(2) then states that an

16

insured may settle a Claim if the total Loss resulting from such Claim does not exceed 50% of the retention (*i.e.* $500,000), provided that the insured must promptly advise the insurer of any such settlement.  *Id.* ¶ 12.  This subsection also states that, when the insured reasonably expects that the Loss resulting from a Claim may exceed 50% of the retention, the insurer will have the right to participate in settlement negotiations and that no settlement offers will be made without the insurer's written consent.  *Id.*

Plaintiff breached its consent obligations under these provisions when it paid $62 million to settle the Individual Claims and incurred an additional $10.3 million in defense expenses without advance consent from the Defendants.  *Id.* ¶ 35.  It instead sought a declaration of coverage for these amounts ***after*** the obligations had been incurred and just days after it first provided notice of the Individual Claims to Defendants.  *See id.* ¶¶ 22, 35.  Tennessee law does not permit the insured to "determine what sums to pay when a claim is made and thereafter make demand upon the carrier for reimbursement without the carrier ever having any input in the process."  *Anderson v. Dudley Moore Ins. Co.*, 640 S.W.2d 556, 559-60 (Tenn. Ct. App. 1982); *see State Auto. Ins. Co. v. Lashlee–Rich*, No. 02A01–9703–CH–71, 1997 WL 781896, at *4-5 (Tenn. Ct. App. 1997) (notification of incident to insurer not sufficient where insured never informed insurer it had contracted for and assumed an obligation to pay for repairs); *see also Perini/Tompkins Joint Venture v. Ace Am. Ins. Co.*, 738 F.3d 95, 105 (4th Cir. 2013) (applying Tennessee law).

Direct cannot be heard to say that it could unilaterally settle the Individual Claims because each such Claim was settled separately for less than 50% of the retention.  If each such Claim is considered a separate Claim for purposes of applying the consent provision, then separate $1 million retentions must also be applied to each Claim.  Stmt. ¶ 2.  That is, Direct

cannot de-couple the Claims for purposes of satisfying its consent obligations and then combine

those same Claims into Related Claims to get the benefit of a single retention.  Moreover, even if

Direct was somehow excused from its initial obligation to obtain consent, it was still required to

promptly advise the Defendants of each such settlement.  It clearly did not meet this requirement,

and instead waited years to present Defendants with the bill for more than 70,000 Individual

Claims that it chose to resolve on its own.  Consequently, Defendants are not responsible for any

of the obligations incurred by Direct in violation of Section IV(C)(1).

**D.      The PIP Settlements Reflect Payment of Additional Benefits Owed under
          Contract, Rather Than Loss Resulting from PIP Claims**

The amounts paid by Direct to settle the PIP Claims are not covered for the additional

reason that the various components of the settlements (*i.e.* the payment of benefits, statutory

penalties and claimants' attorneys' fees) do not constitute "Loss" as defined by the Policies.

Initially, there is no question that the PIP claimants sought to recover benefits due under

contract.  Section 627.736(10) of the PIP statute describes a pre-suit demand letter "[a]s a

condition precedent to filing ***any action for benefits***" (emphasis added).  The only plausible

conclusion that can be drawn from the statutory demand letters, together with the allegations

contained in the complaints in the Advantage MRI and St. Pete MRI Actions, is that the

claimants sought and obtained settlements that reflect the payment of additional policy benefits.

This determination is dispositive for at least two separate reasons.

First, the primary policy states in Section II(I) that Loss shall not include "any amount

due under any contract or policy of insurance" issued by Direct.  Stmt. ¶ 10.  As discussed above,

this provision fits like a glove with respect to the settlement amounts paid by Direct on the PIP

Claims.  *See, e.g., May Dep't Stores Co. v. Fed. Ins. Co.*, 305 F.3d 597, 600-02 (7th Cir. 2002)

(policy provision stating that "benefits due" are not covered bars coverage for settlement of suits

alleging that insured failed to pay amounts owed under ERISA plans by failing to follow statutorily required method for calculating payments).

Second, the benefits that Direct owed but failed to pay are not Loss for the additional reason that Direct was already obligated to pay those amounts under its policies and the PIP statute *before* any Claim was made.  Those amounts therefore cannot constitute Loss because they do not reflect amounts that Direct was "legally obligated to pay *as a result* of a Claim." *Sauter v. Houston Cas. Co.*, 276 P.3d 358, 363-65 (Wash. App. 2012) (amount owed under contract was not covered because insured became obligated to pay that amount as a result of a contract, not as a result of a claim); *Pac. Ins. Co. v. Eaton Vance Mgmt.*, 369 F.3d 584, 589-93 (1st Cir. 2004); *Baylor Heating & Air Conditioning, Inc. v. Federated Mut. Ins. Co.*, 987 F.2d 415, 419-20 (7th Cir. 1993); *Am. Cas. Co. of Reading, Pa. v. Hotel & Rest. Emps. & Bartenders Int'l Union Welfare Fund*, 942 P.2d 172, 176-77 (Nev. 1997); *Oktibbeha Cty. Sch. Dist. v. Coregis Ins. Co.*, 173 F. Supp. 2d 541, 542 (N.D. Miss. 2001).

This result is not only required by the plain language of the Loss definition, it also comports with common sense and sound public policy:  "[i]t makes no sense to permit a dereliction in duty to transform an uninsured liability into an insured event."  *Pac. Ins.*, 369 F.3d at 589-93.  An insured otherwise could pass its pre-existing obligations to pay amounts merely by refusing to pay them, which in turn would incentivize bad behavior by insureds.  *See*, *e.g.*, *May Dep't Stores*, 305 F.3d at 601-02; *Sauter,* 276 P.3d at 364.  Because the settlement payments do not constitute Loss, Direct cannot meet its burden of showing that coverage is triggered.

The Policies also do not provide coverage for the portion of the PIP settlements paid in response to demands for statutory penalties, because the "Loss" definition expressly excludes from Loss "penalties imposed by law."  Stmt. ¶ 10.

19

Once it is determined that there is no coverage for the payment of additional contractual benefits and penalties, the corresponding payment of interest and attorneys' fees to counsel for the underlying claimants is also uncovered.  *See City of Sandusky v. Coregis Ins. Co*., 192 F. App'x 355, 360 (6th Cir. 2006); *Health Net v. RLI Ins. Co*., 206 Cal. App. 4th 232, 257 (2012). Similarly, coverage is unavailable for defense costs because the underlying claim itself is not covered.  *See Wilbanks v. Grange Mut. Cas. Co*., No. 03A01-9103CV109, 1991 WL 172990, at *4 (Tenn. App. 1991); *Nat'l Union Fire Ins. Co. of Pittsburgh, PA. v. Liberty Nat. Bancorp, Inc.*, No. 97-5992, 1998 WL 773673, at *3 (6th Cir. 1998).  As such, once a threshold determination is made that neither the additional policy benefits nor the statutory penalties constitute Loss, there is no coverage for the various legal fees associated with the PIP settlements.

## CONCLUSION

For the reasons set forth herein, Houston Casualty and National Specialty respectfully request that their motion for summary judgment be granted.

Dated: February 26, 2015.

Respectfully submitted,


_s/ Lionel F. Rivera_____
MOUND COTTON WOLLAN
& GREENGRASS
Ira S. Bergman (Fla. Bar No. 980900)
Lionel F. Rivera (Fla. Bar No. 88795)
101 N.E. Third Avenue, Suite 1500
Fort Lauderdale, FL 33301
Tel. (954) 467-5800
Fax (954) 467-5880
ibergman@moundcotton.com
lrivera@moundcotton.com

SHIPMAN & GOODWIN LLP
Alexander R. Karam, Esq. (*pro hac vice*)
1875 K Street, NW, Suite 600
Washington, DC 20006-1251
Tel.: (202) 469-7781
Fax:  (202) 469-7051
akaram@goodwin.com

Mark K. Ostrowski, Esq. (*pro hac vice*)
One Constitution Plaza
Hartford, CT 06103-1919
Tel.: (860) 251-5634
Fax: (860) 251-5216
mostrowski@goodwin.com

*Counsel for Defendant,*
*Houston Casualty Company*


_s/ Thomas J. Meeks *(with consent)___    __
CARLTON FIELDS JORDEN BURT, PA
Thomas J. Meeks, Esq.
(Fla. Bar No. 314323)
Steven Jeffrey Brodie, Esq.
(Fla. Bar No. 333069)
Jason Patrick Kairalla, Esq.
(Fla. Bar No. 594601)
Daniel Gonzalo Enriquez, Esq.
(Fla. Bar No. 85864)
100 S.E. Second Street, Suite 4200
Miami, FL 33131
Tel. (305) 530-0050
Fax (305) 530-0055
sbrodie@cfjblaw.com
tmeeks@cfjblaw.com
jkairalla@cfjblaw.com
denriquez@cfjblaw.com

*Counsel for Defendant,*
*National Specialty Insurance Company*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | | |
|---|---|---|
| DIRECT GENERAL INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) ) | Case No.:  1:14-cv-20050-MGC |
| INDIAN HARBOR INSURANCE COMPANY, HOUSTON CASUALTY COMPANY and NATIONAL SPECIALTY INSURANCE COMPANY, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on February 26, 2015, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF.


_s/ Lionel F. Rivera_____
Lionel F. Rivera (Fla. Bar No. 88795)
lrivera@moundcotton.com
Mound Cotton Wollan & Greengrass
101 N.E. Third Avenue, Suite 1500
Fort Lauderdale, FL 33301
Tel. (954) 467-5800
Fax (954) 467-5880
*Counsel for Defendant,*
*Houston Casualty Company*

22

## SERVICE LIST

### Direct General Insurance Company v. Indian Harbor Insurance Company; Houston Casualty Company; and National Specialty Insurance Company

**CASE NO.: 14-CV-20050**

**United States District Court, Southern District of Florida**

| | |
|---|---|
| Katherine J. Henry, Esq.<br>Bradley Arant Boult Cummings, LLP<br>1615 L. Street, NW<br>Washington, DC 20036<br>Tel. (202) 719-8244<br>Fax (202) 719-8344<br>khenry@babc.com<br>*Counsel for Plaintiff,*<br>*Direct General Insurance Company* | Thor Y. Urness, Esq.<br>Bradley Arant Boult Cummings, LLP<br>1600 Division Street, Suite 700<br>Nashville, TN 37203<br>Tel. (615) 252-2384<br>Fax (615) 252-6380<br>turness@babc.com<br>*Counsel for Plaintiff,*<br>*Direct General Insurance Company* |
| Dylan C. Black, Esq.<br>Bradley Arant Boult Cummings LLP<br>1819 Fifth Avenue North<br>Birmingham, AL 35203<br>Tel. (205) 521-8296<br>Fax (205) 521-8800<br>dblack@babc.com<br>*Counsel for Plaintiff,*<br>*Direct General Insurance Company* | Steven Wayne Davis, Esq.<br>Stephen N. Zack, Esq.<br>Boies, Schiller & Flexner LLP<br>100 S.E. 2nd Street, Suite 2800<br>Miami, FL 33131<br>Tel.  (305) 539-8400<br>Fax  (305) 539-1307<br>sdavis@bsfllp.com<br>szack@bsfllp.com<br>*Counsel for Plaintiff,*<br>*Direct General Insurance Company* |
| Thomas Meeks, Esq.<br>Steven Jeffrey Brodie, Esq.<br>Jason Patrick Kairalla, Esq.<br>Daniel Gonzalo Enriquez, Esq.<br>100 S.E. Second Street, Suite 4200<br>Miami, FL 33131<br>Tel. (305) 530-0050<br>Fax (305) 530-0055<br>tmeeks@cfjblaw.com<br>sbrodie@cfjblaw.com<br>jkairalla@cfjblaw.com<br>denriquez@cfjblaw.com<br>*Counsel for Defendant,*<br>*National Specialty Insurance Company* | Gwynne A. Young, Esq.<br>Carlton Fields Jorden Burt, PA<br>4221 W. Boy Scout Boulevard<br>10th Floor - Corporate Center III<br>Tampa, FL 33067<br>Tel. (813) 223-7000<br>Fax (813) 229-4133<br>gyoung@cfjblaw.com<br>*Counsel for Defendant,*<br>*National Specialty Insurance Company* |